IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

v.

CONNOR PENNINGTON
(Counts 1, 2, 4 and 5),

SOLOMON PENNINGTON
(Counts 1, 2 and 5),

HAYDEN PENNINGTON
(Count 1),

NICOLE MAYORGA
(Counts 1, 2 and 3),

DANIEL ENGLISH
(Counts 1 and 2),

ROBERT SPEAR
(Counts 1 and 2),

JOSEPH MAYORGA BURTT
(Count 1),

and

ROY WILLIAMS
(Count 1),

*Defendants.*

**FILED UNDER SEAL**

Case No. 1:22-CR-127

Count 1: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances
(21 U.S.C. § 846)

Count 2: Conspiracy to Commit Money Laundering
(18 U.S.C. § 1956(h))

Count 3: Possession with Intent to Distribute Marijuana
(21 U.S.C. § 841(a)(1) & (b)(1)(D))

Counts 4–5: Money Laundering
(18 U.S.C. § 1956(a)(1)(B))

Forfeiture Notice:
21 U.S.C. § 853; 18 U.S.C. § 982

**INDICTMENT**

July 2022 TERM – Alexandria, Virginia

## GENERAL ALLEGATIONS

1. Having determined that "[t]he illegal importation, manufacture, distribution and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people[,]" Congress enacted the Controlled Substances Act ("CSA"), codified at Title 21, United States Code, Sections 801 *et seq*.

2. There are five "schedules" of controlled substances, known as Schedule I, II, III, IV, and V. Substances are "scheduled" depending on their potential for abuse and recognized medical usage. Marijuana is a Schedule I controlled substance. Tetrahydrocannabinol ("THC") is derived from marijuana and is also a Schedule I controlled substance.

3. It is unlawful to conduct or attempt to conduct a financial transaction affecting in any degree interstate or foreign commerce involving the proceeds of a "specified unlawful activity," knowing that the property involved in the financial transaction represents some form of unlawful activity and knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, or to avoid a transaction reporting requirement under state or federal law—including Title 31, United States Code, Section 5313(a)—or to conspire to do the same. Title 18, United States Code, Section 1956(h) & (a)(1)(B)(i)-(ii).

4. Violations of the CSA involving the felonious importation, receiving, buying, selling or otherwise dealing in controlled substances are a "specified unlawful activity" for purposes of the prohibitions outlined in Title 18, United States Code, Section 1956(a). Title 18, United States Code, Sections 1956(c)(7), 1961(1)(D).

5. Federal law requires financial institutions to report certain currency transactions. Title 31, United States Code, Section 5313(a). Generally, financial institutions are required to file

reports, known as "Currency Transaction Reports" or "CTRs" for transactions of more than $10,000. Title 31, Code of Federal Regulations, Section 1010.311. CTRs are designed to safeguard financial institutions and alert such institutions to the possibility that proceeds of illegal activity are flowing through their accounts. Title 31, United States Code, Section 5311, et seq.

6. It is unlawful to cause or attempt to cause a financial institution to fail to file a report required by Title 31, United States Code, Section 5313(a) and breaking up currency transactions into multiple, smaller amounts under the $10,000 threshold, to prevent a financial institution from filing a CTR, is known as "structuring," and it is illegal under, among other statutes, Title 31, United States Code, Section 5324(a).

7. Furthermore, causing or attempting to cause a financial institution to fail to file a CTR as required by Title 31, United States Code, Section 5313(a), violates proscriptions against money laundering outlined in Title 18, United States Code, Section 1956(a)(1)(B)(ii).

## COUNT ONE

*(Conspiracy to Distribute Controlled Substances)*

THE GRAND JURY CHARGES THAT:

9. The introductory paragraphs above are re-alleged and re-incorporated as if fully set forth herein.

10. Beginning in at least 2018 and continuing thereafter up to and including March 2022, the exact dates being unknown to the grand jury, in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendants, CONNOR PENNINGTON ("PENNINGTON"), SOLOMON PENNINGTON ("SOLOMON"), HAYDEN PENNINGTON ("HAYDEN"), NICOLE MAYORGA ("MAYORGA"), DANIEL ENGLISH ("ENGLISH"), ROY WILLIAMS ("WILLIAMS"), ROBERT SPEAR ("SPEAR"), and JOSEPH MAYORGA BURTT ("BURTT") did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and others, both known and unknown, to knowingly, intentionally, and unlawfully distribute and possess with intent to distribute marijuana and THC, both Schedule I controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

## OBJECT OF THE CONSPIRACY

11. At all times relevant to this Indictment, Connor PENNINGTON was the owner and operator of JointVentures LLC ("JointVentures"), a company that openly sold recreational marijuana and marijuana-derived products, including THC products, in the greater Washington D.C. metropolitan area. JointVentures operated its delivery service under the name "Joint Delivery."

12. The object of the conspiracy was for JointVentures to make money through the distribution of marijuana, THC, and other marijuana-derived products, and to avoid scrutiny by financial institutions about the illegal source of the money the company deposited into its accounts.

## WAYS, MANNER, AND MEANS

13. It was part of the conspiracy that JointVentures maintained a website, www.jointdelivery.co, through which it facilitated sales orders for its marijuana products, to include raw leaf marijuana, preloaded THC vape cartridges, assorted marijuana edibles, THC wax products, and other items. The website allowed customers to create a profile through which they could place orders for various amounts of JointVentures's marijuana and marijuana-derived products.

14. It was part of the conspiracy that PENNINGTON's brothers, SOLOMON Pennington and HAYDEN Pennington, both worked for him. SOLOMON worked alongside PENNINGTON in running the day-to-day business operations and depositing the cash proceeds. PENNINGTON told SOLOMON in and around October 2021 that SOLOMON had become PENNINGTON's "right hand man." HAYDEN created product photos and marketing materials for the JointVentures website.

15. It was further part of the conspiracy that JointVentures operated the distribution and delivery side of the enterprise out of two units, Apartments 41 and 44, of a residential apartment building located at 1125 12th Street NW, Washington DC 20005. Nicole MAYORGA, Daniel ENGLISH, and Robert SPEAR each worked as the JointVentures office manager at different times during the conspiracy, managing the physical space at 1125 12th Street NW and depositing the company's cash proceeds. Joseph BURTT also worked at the shop at 1125 12th Street NW and corresponded with JointVentures customers regarding their orders.

16. It was further part of the conspiracy that JointVentures delivered its products to customers using delivery drivers or cyclists, similar to food delivery services like UberEats or DoorDash, and dealt primarily in cash. N.N. and K.T. were two JointVentures delivery drivers.

17. It was further part of the conspiracy that WILLIAMS worked with a marijuana farm in Colorado to source leaf marijuana for PENNINGTON and JointVentures. Specifically, WILLIAMS was involved in developing "Rosslyn"-branded marijuana and THC products to be sold through JointVentures.

18. It was further part of the conspiracy that PENNINGTON and his co-conspirators rented a warehouse in Hyattsville, Maryland. The warehouse was used to manufacture and store THC distillate to be used in vape cartridges that JointVentures sold.

19. It was further part of the conspiracy that PENNINGTON employed an accountant, J.F., as Chief Financial Officer of the enterprise. With J.F.'s assistance, PENNINGTON operated the business in the guise of several seemingly legitimate businesses, including CDP Holdings LLC, Bulb Wellness, Refresh Wellness, Sail Software, and others. PENNINGTON controlled each of these entities, and the only funds these entities ever generated came from the unlawful sale of controlled substances, including marijuana and THC products.

20. It was further part of the conspiracy that J.F. aided PENNINGTON in creating and incorporating business entities, and opening and maintaining bank accounts. J.F. also maintained the daily "cash on hand" balance sheet for JointVentures. This record accounted for all daily credits and debits associated with JointVentures's marijuana/THC business. J.F. maintained these records electronically at his home in Loudoun County, Virginia.

21. It was further part of the conspiracy that the enterprise operated bank accounts at several different financial institutions in the names of its various businesses, including

JointVentures. Members the conspiracy used these accounts to deposit cash earned from the unlawful sale of marijuana/THC products. Members of the conspiracy also used these accounts to pay the conspiracy's operating expenses—such as paying wholesalers for product, and purchasing packaging material and rent on their physical spaces.

22. For example, on or about February 23, 2021, J.F. sent an email to PENNINGTON, ENGLISH, MAYORGA, BURTT, and WILLIAMS, reviewing the "daily (Monday-Thursday) deposit process." J.F. stated, "It is really important that this ($7500 deposits [of cash proceeds] performed the following morning by who closed) be done on a daily basis to support the disbursement needs of the entire organization, not just JV [JointVentures]."

23. It was further part of the conspiracy that J.F. directed JointVentures employees to deposit cash proceeds from sales in increments of less than $10,000, in order to avoid scrutiny by the banks and to disguise the nature and source of cash they were depositing and transacting.

24. It was part of the conspiracy that PENNINGTON and his co-conspirators understood that JointVentures's business was illegal. For example, on or about November 16, 2021, PENNINGTON texted J.F.: "But we aren't a legit business. That's what I'm saying. We are buying black market products and running a black market business. It just doesn't make sense to pay all these taxes. We get what a gold star[?] Like who cares. . . . We can't get lines of credit, we can't get investors. Like we aren't a legit business because what we do isn't a licensed legal business."

## OVERT ACTS

25. In furtherance of the conspiracy, and to effect the objects thereof, PENNINGTON, SOLOMON, HAYDEN, MAYORGA, ENGLISH, WILLIAMS, SPEAR, BURTT, and their co-

conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

26. In and around November 2018, J.F. filed, or caused to be filed, a corporation filing for JointVentures with the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The filing listed the principal office as "Suite 44" of 1125 12th Street NW. The DCRA filing stated falsely that JointVentures was in the business of "E-commerce sales of smoke shop accessories."

27. In and around April 2019, PENNINGTON traveled to Colorado to purchase leaf marijuana to sell through JointVentures. PENNINGTON told J.F. that PENNINGTON was going to buy 15 pounds of marijuana at a price of $1,600 per pound.

28. In an around June 2021, an individual unknown to the grand jury caused a parcel to be mailed from California to "Josephine Burte" (BURTT) at the address of the JointVentures shop at 1125 12th Street NW. The parcel contained a heat-sealed plastic bag containing green leafy material, and two clear plastic jars of THC wax.

*The 7362 Account*

29. On or about January 14, 2020, PENNINGTON opened a bank account, ending in 7362, in the name of JointVentures at TD Bank (hereinafter, "the 7362 Account"). The bank application listed the business's address as 1125 12th Street NW, Washington D.C. 20005, and the business email address as connor@cdp-holdings.com. One of the documents provided to TD Bank in conjunction with the opening of the account was the DCRA filing that falsely stated that JointVentures was in the business of "E-commerce sales of smoke shop accessories."

30. On or about February 4, 2020, SPEAR deposited approximately $4,485 in cash proceeds into the 7362 Account.

31. On or about April 9, 2020, a cash deposit in the amount of $8,000 was made into the 7362 Account. On the same day, WILLIAMS received a wire transfer from the 7362 Account in the amount of approximately $4,500. On or about April 17, 2020, HAYDEN received a wire transfer from the 7362 Account in the amount of approximately $1,514.68.

32. On or about March 9, 2020, PENNINGTON deposited approximately $4,000 in cash proceeds into the 7362 Account at a TD Bank branch in Arlington, Virginia. On the same day, J.F. received a wire transfer from the 7362 Account in the amount of $1,700, and HAYDEN received a wire transfer from the 7362 Account in the amount of approximately $1,438.05.

33. On or about May 26, 2020, PENNINGTON deposited approximately $8,000 in cash proceeds into the 7326 Account at a TD Bank branch in Alexandria, Virginia. On the same day, a wire transfer in the amount of $6,000 was made from the 7326 Account to a bank account held by CDP Holdings LLC.

34. In and around June 2020, the following deposits of cash from marijuana and THC proceeds were deposited were made into the 7362 Account:

| Date | Amount | Branch Location |
|---|---|---|
| June 2, 2020 | $5,000 | Tenleytown (Washington, D.C.) |
| June 10, 2020 | $5,000 | Alexandria, Virginia |
| June 11, 2020 | $5,000 | Tenleytown (Washington, D.C.) |
| June 12, 2020 | $6,000 | Falls Church, Virginia |
| June 17, 2020 | $6,000 | Alexandria, Virginia |
| **Total: $36,000** | | |

35. Also in and around June 2020, the 7362 Account made seven outgoing wire transfers to a BBVA Bank account ending in 8473, held in the name of CDP Holdings (hereinafter, "the 8473 Account"). The seven wires were each for amounts of less than $10,000, but altogether, totaled $32,500.

*The 8473 Account*

36. On or about April 1, 2020, J.F. opened, and caused to be opened, the 8473 Account. The business's address on the account was 43116 Hunters Green Square, Broadlands, Virginia 20148, and the business email address was john@cdp-holdings.com.

37. On or about April 27, 2020, the 8473 Account received a wire transfer in the amount of $4,000 from JointVentures. The next day, on or about April 28, 2020, the 8473 Account received a wire transfer in the amount of $9,650 from JointVentures. Two days later on or about April 30, 2020, the 8473 Account received a wire transfer in the amount of $3,500 from JointVentures.

38. On or about May 12, 2020, the 8473 Account received two wire transfers from JointVentures, one for $9,000 and one for $1,000. The next day, on or about May 13, 2020, the 8473 Account received another wire transfer in the amount of $2,000 from JointVentures.

39. On or about May 14, 2020, HAYDEN received a transfer from the 8473 Account in the amount of approximately $1,514.68. HAYDEN received approximately the same amount from the 8473 Account on June 1, 2020; June 15, 2020; June 30, 2020; July 14, 2020; July 31, 2020; and August 19, 2020. Thereafter, HAYDEN continued to receive transfers regularly from the 8473 Account in the amount of approximately $1,410. These include the following transactions occurring on August 31, 2020; October 1, 2020; October 29, 2020; November 13, 2020; and November 30, 2020.

40. On or about July 14, 2020, WILLIAMS received a transfer from the 8473 Account in the amount of approximately $2,976. WILLIAMS received approximately the same amount from the 8473 Account on the following dates: July 31, 2020; August 17, 2020; October 29, 2020; November 13, 2020; and November 30, 2020.

*The 4196 Account*

41. On or about May 6, 2021, J.F. and PENNINGTON opened a SunTrust Bank account ending in 4196, held in the name of JointVentures ("the 4196 Account"). On the application, PENNINGTON was listed as the "CEO" of JointVentures, and J.F. was listed as the "CFO."

42. On or about June 1, 2021, J.F. sent an email to PENNINGTON and ENGLISH laying out the deposit schedules for the conspiracy's various bank accounts. The schedule was as follows:

| June 7 & forward | | | | |
|---|---|---|---|---|
| | JV SunTrust | BofA CDPH | BofA Refresh | Sail SW |
| Monday | 3,000 | | | |
| Tuesday | | 9,000 | | |
| Wednesday | 3,000 | | 7,000 | |
| Thursday | | | | 6,250 |
| Friday | 3,000 | | | |

43. J.F. further explained, "You'll notice that it's not more than 2 banks in any one day and no more than $9k [$9,000] for the week. I'm attempting to minimize the deposits into JV in order to prolong the account."

44. On or about September 22, 2021, SOLOMON deposited $3,000 in cash proceeds into the 4196 Account. This was done at PENNINGTON's direction.

45. On or about October 5, 2021, SOLOMON deposited $2,000 in cash proceeds into the 4196 Account at PENNINGTON's direction.

46. On or about October 7, 2021, PENNINGTON texted SOLOMON, "Good morning, I need to get this amount deposited into SunTrust so I can use the card to pay for these carts [THC

vape cartridges]. Are you able to go handle that for me early this morning?" SOLOMON responded, "Alright," and thereafter, deposited $2,500 into the 4196 Account at PENNINGTON's direction.

47. On or about November 16, 2021, SOLOMON deposited $2,000 in cash proceeds into the 4196 Account at PENNINGTON's direction.

*Controlled Purchases from JointVentures*

48. On or about January 28, 2021, a law enforcement officer acting in an undercover capacity ("the UC") set up a customer account to purchase marijuana and THC products from JointVentures. When the account set-up process was complete, the UC received a confirmation email from "Joint Delivery." The email stated that customer support could be reached at the email address info@jointdelivery.co.

49. The UC then placed an order from JointVentures for various THC products, including "wedding cookie" flavored marijuana, THC vape cartridges and "Rosslyn"-branded THC rosin. Thereafter, the UC received a text message and then a phone call from BURTT, inquiring where the UC wanted to meet the delivery driver. BURTT suggested that the UC meet the driver at a bakery in the Georgetown neighborhood of Washington, D.C. The UC agreed.

50. Thereafter, the delivery driver, N.N., arrived at the agreed-upon location and distributed the marijuana and THC products to the UC. In return, the UC provided N.N. with $450 in cash.

51. On or about May 11, 2021, the UC placed another order from JointVentures for marijuana and THC products, including pre-rolled marijuana cigarettes, THC extract, and THC vape cartridges. Once again, the UC agreed to meet the delivery driver in Georgetown.

52. Thereafter, the delivery driver, K.T., arrived at the agreed-upon location and distributed the marijuana and THC products to the UC. In return, the UC provided K.T. with $400 in cash.

*Controlled Delivery to MAYORGA*

53. On or about March 16, 2021, MAYORGA signed for and accepted a parcel delivered by a United States Postal Inspection Service agent. Thereafter, law enforcement executed a search warrant on MAYORGA's residence.

54. The parcel that MAYORGA had received contained approximately 18 vacuum-sealed bags of marijuana.

*The Refresh Wellness Warehouse*

55. In and around October 2020, PENNINGTON signed a three-year lease for a warehouse located in Hyattsville, Maryland. There, PENNINGTON set up manufacturing and storage operations for Refresh Wellness, the brand of THC vape cartridges sold by Joint Ventures.

56. On or about April 28, 2021, PENNINGTON and SOLOMON went to the warehouse and went inside. PENNINGTON exited the warehouse carrying two boxes, which he placed in the back of his vehicle. PENNINGTON then departed the area, followed by SOLOMON in another vehicle.

57. Shortly thereafter, the Maryland State Police conducted a traffic stop on PENNINGTON for a traffic infraction. PENNINGTON was found to be in possession of two boxes containing approximately 405 THC vape cartridges and approximately 47 small white containers of THC wax. PENNINGTON possessed these items with the intent to distribute them.

58. On or about July 27, 2021, the website www.jointdelivery.co depicted THC vape cartridges on offer for sale that appeared identical to the ones seized from PENNINGTON in April.

*March 2022 Search Warrants*

59. On or about March 8, 2022, law enforcement executed search warrants at Apartments 41 and 44 of 1125 12th Street NW in Washington, D.C., as well as the Refresh Wellness warehouse in Hyattsville, Maryland.

60. In Apartment 41, agents found various strains of leaf marijuana, numerous containers of THC wax, various kinds of THC edibles, pre-rolled marijuana/THC cigarettes, THC lip balms, THC vape cartridges, drug paraphernalia, and approximately $4,699 in U.S. currency, among other items. In Apartment 44, agents found two small plastic containers of leaf marijuana, miscellaneous business documents, and a THC rosin press machine, among other items.

61. In the Hyattsville warehouse, agents found four mason jars containing THC, and multiple THC vape cartridges, as well as equipment and materials used in the processing of THC oil.

62. Following the search warrants, on or about March 15, 2022, an email was sent from "Joint Ventures" using the email address support@jointdelivery.co to customers of the business. The email stated in part:

**PSA! What happened to Joint?**

Hello JD Family,

I am sure many of you are wondering "What happened to JD?" and "Why is there nothing on their site?". Well, let me start off by saying that we appreciate each and every one of our JD customers over the past 5 years and consider everyone a part of family. We have only been able to do this with the support of everyone and the continued following. Last week our business was raided, and all our incomes, product, and sense of security was taken. We had to immediately shut down and seize operation until we had better guidance from our legal team. There were no arrests or charges placed, but we had to reevaluate our business and understand the situation. Unfortunately, cannabis is still not federally legal and even though in DC there are shops on every corner we all are taking a risk each day to gift DC with adult use cannabis. We are very privileged to have this opportunity, but at the same time when things like this happen it takes way jobs and livelihoods.

63. On or about March 25, 2022, another email was sent from "Joint Ventures" using the email address support@jointdelivery.co to customers of the business. That email, which bore the subject line "Smoke Shop Delivery is Back!," stated in part:

> As you may know that we used to really focus on our smoke shop and merch products.

> Due to legal issues we have had to go back to that model of business, and will still allow gifting on all products. Essentially you will chose a package, chose a gift and proceed like usual. We will be adding new products on weekly to enhance the overall experience and we are still accepting cash or card upon delivery. If you have any questions our new customer service email is support@jointdelivery.co. Please be patient with us through this time of restart as we slowly will be getting our inventory back. Thank you!

64. Thereafter, JointVentures resumed operations at 1125 12th Street NW. As of on or about April 14, 2022, JointVentures was again offering marijuana and THC products for sale on its website, www.jointdelivery.co. On or about April 21, 2022, PENNINGTON and an unidentified delivery cyclist entered Apartment 41. On or about May 4, 2022, SOLOMON entered Apartment 41.

65. On or about May 10, 2022, law enforcement executed another search warrant at Apartment 41. There, agents found THC oil, various THC edibles, THC vape cartridges, pre-rolled marijuana cigarettes, leaf marijuana, among other items.

(All in violation of Title 21, United States Code, Section 846)

COUNT TWO

(*Conspiracy to Commit Money Laundering*)

THE GRAND JURY FURTHER CHARGES THAT:

66. The introductory paragraphs preceding Count One above are re-alleged and re-incorporated as if fully set forth herein, as are the Ways, Manner, and Means and Overt Acts portions of Count One.

67. Beginning in at least 2018 and continuing thereafter up to and including at least March 2022, the exact dates being unknown to the grand jury, in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendants, PENNINGTON, SOLOMON, MAYORGA, ENGLISH, and SPEAR, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with each other and others both known and unknown to commit the following offenses:

68. The defendants—PENNINGTON, SOLOMON, MAYORGA, ENGLISH, and SPEAR—and others, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity—namely, the conspiracy to distribute controlled substances as set forth and charged in Count One of this Indictment—did knowingly conduct and attempt to conduct such financial transactions, and cause such financial transactions to be conducted, knowing that the transactions were designed in whole and in part—

a. to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. to avoid a transaction reporting requirement under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

(All in violation of Title 18, United States Code, Section 1956(h))

COUNT THREE

(*Possession with Intent to Distribute Marijuana*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 16, 2021, in Loudoun County, Virginia, in the Eastern District of Virginia, the defendant, NICOLE MAYORGA, did knowingly, intentionally, and unlawfully possess with the intent to distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(D))

COUNT FOUR

(*Money Laundering*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 17, 2020, in Fairfax County, Virginia, in the Eastern District of Virginia, the defendant, CONNOR PENNINGTON, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity—namely, the conspiracy to distribute controlled substances as set forth and charged in Count One of this Indictment—did knowingly conduct and attempt to conduct such financial transaction knowing that the transaction was designed in whole and in part—to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity; and to avoid a transaction reporting requirement under State and Federal law.

(In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) & (ii))

COUNT FIVE

(*Money Laundering*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about January 13, 2022, in Arlington County, Virginia, in the Eastern District of Virginia, the defendants, CONNOR PENNINGTON and SOLOMON PENNINGTON, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity—namely, the conspiracy to distribute controlled substances as set forth and charged in Count One of this Indictment—did knowingly conduct and attempt to conduct such financial transaction knowing that the transaction was designed in whole and in part—to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity; and to avoid a transaction reporting requirement under State and Federal law.

(In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) & (ii))

FORFEITURE NOTICE

THE GRAND JURY HEREBY FINDS probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein. Pursuant to Fed. R. Crim. P. 32.2(a), the defendants, CONNOR PENNINGTON, SOLOMON PENNINGTON, HAYDEN PENNINGTON, NICOLE MAYORGA, DANIEL ENGLISH, ROY WILLIAMS, ROBERT SPEAR, and JOSEPH MAYORGA BURTT are hereby notified that if convicted of Count One of this Indictment, they shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a) and 970, any property constituting, or derived from, any proceeds each defendant obtained, directly or indirectly, as the result of such violation; and any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

If convicted of Count Two of this Indictment, the defendants CONNOR PENNINGTON, SOLOMON PENNINGTON, NICOLE MAYORGA, DANIEL ENGLISH, and ROBERT SPEAR, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1) all property, real or personal, involved in the offense and any property traceable thereto.

The property subject to forfeiture includes, but is not limited to, the following property:

a. A money judgment of at least $3 million in United States currency representing proceeds the defendants obtained in the course of the drug conspiracy and property involved in the money laundering conspiracy, as alleged in this Indictment;

b. Approximately $4,699 in U.S. currency seized from 1125 12th Street NW, Apt. 41, Washington D.C. 20005, on March 8, 2022;

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of forfeitable property described in this forfeiture allegation.

(In accordance with Title 18, United States Code, Section 982; Title 21, United States Code, Sections 853; and Federal Rule of Criminal Procedure 32.2(a))

A TRUE BILL

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson

Jessica D. Aber
United States Attorney

By: ______________________
Katherine E. Rumbaugh
David A. Peters
Assistant United States Attorneys